## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

**LORRAINE NETRICK ABRAHAM,**

     **Plaintiff,**

**v.**                                                      **Case No.**

**EMORY AND HENRY COLLEGE,**

**SERVE:**
**President Jake Schrum**
**Emory & Henry College**
**30461 Garnand Drive**
**Emory, VA  24327**

     **Defendant.**

## COMPLAINT

The above-named Plaintiff, Lorraine Netrick Abraham ("Ms. Abraham" or "Plaintiff"), by counsel, states as her Complaint against Defendant Emory & Henry College ("E&H" or "Defendant"), the following:

### I. JURISDICTION

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII, as amended by the Civil Rights Act of 1991 and as codified under 42 U.S.C. §2000e *et seq*. ("Title VII"), and/or the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA"), and/or the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., and the ADA Amendments Act of 2008 ("ADA").  *See generally* 28 U.S.C. §

1

1331; 28 U.S.C. §1343(a)(4).

2.  This Court also possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as the acts and/or omissions giving rise to the Plaintiff's emotional distress claims arose from the same basis of operative fact and same controversies under the law.  Pursuant to 28 U.S.C. § 1367(a), these claims are so related to claims involving original jurisdiction that they form part of the same case or controversy.

3.  Venue is appropriate as the acts and/or omissions of E&H from which the causes of action arise, occurred in the village of Emory, which is located within the County of Washington, and which is within the Western District of Virginia, Abingdon Division.  *See* 28 U.S.C. §1391(b)(2).

4.  Due to its contacts within the Commonwealth of Virginia, E&H avails itself to the jurisdiction of this Court.

5.  Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 1, 2016.    Plaintiff received a Dismissal and Notice of Rights from the EEOC dated March 21, 2017, attached as **EXHIBIT A**.  Plaintiff files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

## II. THE PARTIES

6.  E&H is a liberal arts higher education institution located in Emory, Virginia (Washington County).

7.  Ms. Abraham, born in 1955[1], identifies her gender/sex as female, and suffers from various disabilities, as detailed within the Factual Allegations section of the Complaint.  At all times relevant, Ms. Abraham was a resident of Abingdon, Virginia (Washington County).  Ms. Abraham currently resides in Gray, Tennessee.

### III.  FACTUAL ALLEGATIONS

### Ms. Abraham's Excellent Work Performance at E&H

8.  Ms. Abraham, currently sixty-one (61) years of age, began working for E&H, on or about August 15, 2000.

9.  Ms. Abraham worked for E&H on a consistent, full-time basis for almost sixteen (16) years, most recently as the Chief Information Officer and Director of the Library.

10. Ms. Abraham managed approximately twenty-five (25) employees, spanning three (3) campuses, and her job duties included essentially three positions.  Ms. Abraham was the Director of the Information Technology ("IT") Department and spearheaded both day-to-day operations, as well as new IT initiatives.  Ms. Abraham directed the Library and functioned as a Reference Librarian.  Ms. Abraham also oversaw E&H's Instructional Technology, which was a subset of the IT Department during her tenure, but was transitioned into a separate department subsequent to her termination from employment.

11. Prior to her unlawful termination in May of 2016, Ms. Abraham's work performance was always excellent, and consistently met or exceeded E&H's

---

[1] Ms. Abraham's exact date of birth is not included due to privacy concerns and due to filing requirements as per the United States District Court Western District of Virginia Local Rules.

expectations.

12. Indeed, Ms. Abraham always received only positive work performance evaluations, was never disciplined, and received numerous awards and accolades during her tenure, including the Maiden Award. [2] Ms. Abraham also received a Salzburg Fellowship[3] in 2014, served on the Southern Association of Colleges and Schools-Commission on Colleges ("SACS-COC")[4], served as a four-term President of the Mid Atlantic Library Alliance ("MALIA")[5], and was the driving force and Project Director behind an estimated five (5) year, $1.77 million federal grant awarded to E&H.

### Ms. Abraham's Disabilities

13. Ms. Abraham is also disabled. She suffers from painful and debilitating orthopedic issues that she sustained after being crushed in an automobile accident as a teenager. Ms. Abraham has suffered through six (6) hip replacement surgeries, a knee replacement surgery and multiple foot surgeries related to these injuries.

14. Additionally, a faulty medical inferior vena cava ("IVC") filter implanted in Ms.

---

[2] The Maiden Award was awarded to Ms. Abraham in 2009 and is the highest award bestowed by E&H upon an employee. The Maiden Award rewards outstanding administrative service to E&H.

[3] Salzburg Global Seminar is a non-profit organization that hosts programs on global topics as diverse as health care, education, culture, economics, geopolitics, LGBT issues, justice, and sustainability. Its objective is to "challenge current and future leaders to solve issues of global concern" by designing, facilitating, and hosting international strategic program held at Schloss Leopoldskron, in Salzburg, Austria, and in other locations throughout the world. It has hosted more than 500 sessions, consisting of more than 30,000 participants from 169 countries, since its establishment in 1947. http://www.salzburgglobal.org/who-we-are/our-mission.html. At one time, the Salzburg Institute collaborated with the Appalachian College Association, of which E&H is a member, and the Mellon Foundation. The ACA conducted a highly competitive selection process for which ACA member institution faculty members could apply. Those recommended for participation were then funded by the Mellon Foundation as "Fellows." It was considered a prestigious invitation to be invited to be a Salzburg Fellow.

[4] The mission of SACS-COC is the improvement of education in the South through accreditation. http://www.sacs.org/.

[5] MALIA is a consortium of over 245 public, academic, school, and special libraries. http://malialibrary.org/.

Abraham in 2004 resulted in metal fragments from the device embedding in her lung, heart, and spine. The situation, communicated to Ms. Abraham in late 2015, is dire, as the device cannot be safely removed via surgery, and Ms. Abraham faces the considerable, elevated risks of internal bleeding, heart attack, and death.

15. Ms. Abraham's disabilities affect the major life activities of walking, standing, and sitting.

16. However, Ms. Abraham was fully capable of working, and had no plans to retire in 2016.

## Ms. Abraham Reveals her Disabilities to E&H

17. Ms. Abraham revealed her disabilities to E&H, and received limited accommodations regarding her orthopedic issues. In or around 2005, E&H installed a staff bathroom with a grab bar and other disability-related amenities to make the restroom more accessible to Ms. Abraham. In or around 2010, after multiple requests, E&H provided Ms. Abraham with a designated parking space.

18. Ms. Abraham informed E&H supervisor, David Haney, Vice President of Academic Affairs, of the IVC filter implant issue in or around February 2016, and again in or around April 2016. Ms. Abraham also provided this same information to E&H supervisor Melissa Taverner, Interim Dean of Faculty, in or around April 2016.

19. Ms. Abraham specifically advised both Mr. Haney and Ms. Taverner that she [Ms. Abraham] anticipated that she would need additional accommodations related to this serious health condition.

20. Upon information and belief, shortly thereafter, Mr. Haney and/or Ms. Taverner, advised Jake Schrum, President of E&H and Ms. Abraham's ultimate supervisor, of Ms. Abraham's disabilities and her anticipated need for additional accommodations.

21. Upon information and belief, rather than accommodate Ms. Abraham, President Schrum determined that he would instead terminate Ms. Abraham's employment.

### Ms. Abraham Abruptly Terminated from Employment

22. Indeed, on May 19, 2016, Ms. Taverner called Ms. Abraham to her office and, with E&H Human Resources Director Kim Steiner present, advised Ms. Abraham that E&H was terminating Ms. Abraham's employment, effective immediately, and demanded that Ms. Abraham remove all personal items from her office and leave the premises by the end of the work day.

23. Ms. Steiner did not give Ms. Abraham a reason for Ms. Abraham's termination from employment, despite Ms. Abraham's requests for an explanation.

24. While Ms. Abraham was shocked and dismayed at this disrespectful treatment, despite sixteen (16) years of dedicated employment, she cleaned out her desk and left the E&H campus immediately.

25. During April and May of 2016, approximately eighteen (18) additional E&H employees were terminated, apparently due to a "re-organization" of the institution. Upon information and belief, the majority of the terminated employees were female

6

and over the age of forty (40).

26. The discriminatory nature of these abrupt terminations was so blatant that, upon information and belief, on or around June 2, 2016, the E&H Council of Chairs wrote a letter to President Schrum expressing "frustration and anger" regarding the May 2016 staff dismissals.

27. On or around June 13, 2016, the E&H Faculty Advisory Committee met with President Schrum to address the "seemingly gendered nature of the recent layoffs," and E&H's Women and Gender Studies Collective sent a corresponding letter to President Schrum noting "grave concern at the way in which women . . . were disproportionally a victim of the recent staff layoffs."

28. Ms. Abraham's termination was merely a pretext to unlawful discrimination and retaliation by E&H.  The close temporal proximity between Ms. Abraham's disclosure of her disabilities and related accommodation requests and her termination suggests that E&H discriminated and retaliated against Ms. Abraham because of her disability and/or accommodation requests.

29. Moreover, Ms. Abraham's termination from employment, which coincided with the terminations of a disproportionate number of older, female E&H employees, arose under circumstances that raise a reasonable inference of unlawful discrimination by E&H based upon Ms. Abraham's age and sex.

30. Upon information and belief, many of Ms. Abraham's job duties, in particular her IT-related duties, were taken over by non-disabled males who are younger than

Ms. Abraham.

31. Upon information and belief, Ms. Abraham's Library Director job duties were re-packaged into a new position titled "Dean of Library", which, upon information and belief, has not yet been filled.

## Failure to Hire Ms. Abraham

32. Ms. Abraham was never offered the Dean of Library position even though she was very qualified, and many of the job duties mirrored her prior job duties as Library Director.

33. Indeed, E&H also discriminated against Ms. Abraham by failing to hire her for a position for which she was more than qualified. Specifically, in or about August 2016, Ms. Abraham became aware that E&H was advertising an employment opportunity for an Administrative Assistant for Alumni Relations.

34. Even though Ms. Abraham was overly qualified for an entry-level administrative position, she submitted an application on or around August 9, 2016.

35. However, E&H failed to interview or otherwise consider Ms. Abraham for this position.

36. Upon information and belief, the Administrative Assistant position was filled by a younger, non-disabled individual.

## IV.  COUNTS

### COUNT I:  Disparate Treatment Pursuant to Title VII

37. Ms. Abraham incorporates by reference herein the preceding paragraphs of this Complaint.

38. Ms. Abraham is a female, and protected from sex discrimination, and disparate treatment based upon sex, by Title VII.

39. E&H discriminated against Ms. Abraham by treating her differently from and less preferably than similarly situated male employees and subjecting her to other differential treatment on the basis of her sex.

40. E&H violated federal law by permitting a work environment to exist that was discriminatory to Ms. Abraham, and other female E&H employees, and by wrongfully terminating Ms. Abraham, and the employment of other female E&H employees based upon their sex.

41. Prior to Ms. Abraham's termination from employment, she was performing her work at a satisfactory level and meeting or exceeding E&H's legitimate business expectations.

42. E&H would not have terminated Ms. Abraham's employment or taken the other discriminatory actions against Ms. Abraham but for Ms. Abraham's sex.  Alternatively, Ms. Abraham's sex was a motivating factor in E&H's actions.

43. Because the actions of E&H supervisory employees were taken within the scope of their employment, E&H is responsible for their actions based upon the doctrine of *respondeat superior*.

44. As a direct and proximate result of the actions of E&H, Ms. Abraham has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

45. At all times material hereto, E&H engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Abraham so as to support an award of punitive damages.

46. The above-described acts by E&H constitute discrimination and disparate treatment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII").

## COUNT II:  Disparate Impact Pursuant to Title VII

47. Ms. Abraham incorporates by reference herein the preceding paragraphs of this Complaint.

48. Ms. Abraham is a female, and protected from sex discrimination, and disparate treatment based upon sex, by Title VII.

49. E&H discriminated against Ms. Abraham by treating her differently from and less preferably than similarly situated male employees and subjecting her to other differential treatment on the basis of her sex.

10

50. E&H violated federal law by permitting a work environment to exist that was discriminatory to Ms. Abraham, and other female E&H employees, and by wrongfully terminating Ms. Abraham's employment, and the employment of other female E&H employees, based upon their sex.

51. E&H's policies, practices, and/or procedures related to an alleged "re-organization" of the institution in or around April and May of 2016 have had a disparate impact on Ms. Abraham and other female E&H employees with respect to the terms and conditions of their employment.

52. E&H would not have terminated Ms. Abraham's employment or taken the other discriminatory actions against Ms. Abraham but for Ms. Abraham's sex. Alternatively, Ms. Abraham's sex was a motivating factor in E&H's actions.

53. Because the actions of E&H supervisory employees were taken within the scope of their employment, E&H is responsible for their actions based upon the doctrine of *respondeat superior*.

54. As a direct and proximate result of the actions of E&H, Ms. Abraham has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

55. At all times material hereto, E&H engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Abraham so as to support an award of punitive damages.

56. The above-described acts by E&H constitute discrimination and a disparate

11

impact to Ms. Abraham in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq*. ("Title VII").

## COUNT III: Discrimination Pursuant to Title VII

57. Ms. Abraham incorporates by reference herein the preceding paragraphs of this Complaint.

58. Ms. Abraham is a female and protected by Title VII from a work environment that is accepting of sexual discrimination.

59. E&H discriminated against Ms. Abraham by treating her differently from and less preferably than similarly situated male employees and subjecting her to other discriminatory treatment on the basis of her sex.

60. E&H violated federal law by permitting a work environment to exist that was discriminatory to Ms. Abraham, and other female E&H employees, and by wrongfully terminating Ms. Abraham's employment, and the employment of other female E&H employees, based upon their sex.

61. Prior to Ms. Abraham's unlawful termination from employment, she was performing her work at a satisfactory level and meeting or exceeding E&H's legitimate business expectations.

62. At all times relevant, E&H retained substantial control over the context in which the discriminatory conduct occurred.

12

63. Because the actions of E&H supervisory employees were taken within the scope of their employment, E&H is responsible for their actions based upon the doctrine of *respondeat superior*.

64. The above-described acts by E&H constitute sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq*. ("Title VII").

### COUNT IV:  Disparate Treatment Pursuant to ADEA

65. Ms. Abraham incorporates by reference herein the preceding paragraphs of this Complaint.

66. At the time of her termination from employment from E&H, Ms. Abraham was sixty (60) years of age, and protected from age discrimination by the ADEA.

67. E&H discriminated against Ms. Abraham by treating her differently from and less preferably than similarly situated younger employees and subjecting her to other differential treatment on the basis of her age.

68. E&H violated federal law by permitting a work environment to exist that was discriminatory to Ms. Abraham, and other older E&H employees, and by wrongfully terminating Ms. Abraham, and other older E&H employees, based upon their age.

69. Prior to Ms. Abraham's unlawful termination from employment, she was performing her work at a satisfactory level and meeting or exceeding E&H's legitimate business expectations.

70. E&H would not have terminated Ms. Abraham's employment and the

employment of other older E&H employees, or taken the other discriminatory actions against them, but for their age.

71. Because the actions of E&H supervisory employees were taken within the scope of their employment, E&H is responsible for their actions based upon the doctrine of *respondeat superior*.

72. As a direct and proximate result of the actions of E&H, Ms. Abraham has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

73. At all times material hereto, E&H engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Abraham so as to support an award of punitive damages.

74. The above-described acts by E&H constitute discrimination and disparate treatment in violation of the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA").

## COUNT V:  Disparate Impact Pursuant to ADEA

75. Ms. Abraham incorporates by reference herein the preceding paragraphs of this Complaint.

76. At the time of her termination from employment from E&H, Ms. Abraham was sixty (60) years of age, and protected from age discrimination by the ADEA.

77. E&H discriminated against Ms. Abraham by treating her differently from and less preferably than similarly situated younger employees and subjecting her to other

14

differential treatment on the basis of her age.

78. E&H violated federal law by permitting a work environment to exist that was discriminatory to Ms. Abraham, and other older E&H employees, and by wrongfully terminating Ms. Abraham, and other older E&H employees, based upon their age.

79. E&H's policies, practices, and/or procedures related to a "re-organization" of the institution in or around April and May of 2016 have had a disparate impact on Ms. Abraham and other E&H employees with respect to the terms and conditions of their employment.

80. E&H would not have terminated Ms. Abraham's employment, and the employment of other older E&H employees, or taken the other discriminatory actions against them, but for their age.

81. Because the actions of E&H supervisory employees were taken within the scope of their employment, E&H is responsible for their actions based upon the doctrine of *respondeat superior*.

82. As a direct and proximate result of the actions of E&H, Ms. Abraham has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

83. At all times material hereto, E&H engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Abraham so as to support an award of punitive damages.

84. The above-described acts by E&H constitute discrimination and disparate

impact in violation of the Age Discrimination in Employment Act, as codified under

Title 29 U.S.C. §§ 621 through 634 ("ADEA").

## COUNT VI:  Discrimination Pursuant to ADEA

85. Ms. Abraham incorporates by reference herein the preceding paragraphs of this

Complaint.

86. At the time of her termination from employment from E&H, Ms. Abraham was

sixty (60) years of age, and protected from age discrimination by the ADEA.

87. Ms. Abraham experienced unwelcome discrimination based upon her age.

88. E&H would not have terminated Ms. Abraham or taken the other discriminatory

actions against Ms. Abraham but for Ms. Abraham's age.

89. Because the actions of E&H supervisory employees were taken within the scope

of their employment, E&H is responsible for their actions based upon the doctrine of

*respondeat superior*.

90. Prior to Ms. Abraham's termination from employment, Ms. Abraham was

performing her work at a satisfactory level and meeting or exceeding E&H's legitimate

business expectations.

91. Any reasons cited by E&H for Ms. Abraham's termination from employment

were pretextual as Ms. Abraham's work performance was meeting legitimate business

expectations.

92. Upon information and belief, after Ms. Abraham's termination from

employment, her job duties were taken over by one or more E&H employees, all of

whom are younger than Ms. Abraham.

93. As a direct and proximate result of E&H's actions, Ms. Abraham has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

94. At all times material hereto, E&H engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Abraham so as to support an award of liquidated damages.

95. The above-described acts by E&H and employees of E&H constitute age discrimination in violation of the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA").

## COUNT VII:  Failure to Hire Pursuant to the ADEA

96. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

97. At the time of her unlawful termination from employment in or around May 19, 2016, Ms. Abraham was sixty (60) years of age, and protected from age discrimination by the ADEA.

98. Upon information and belief, many of Ms. Abraham's job duties were re-packaged into a new position titled "Dean of Library", which, upon information and belief, has not yet been filled.

99. E&H discriminated against Ms. Abraham by refusing to offer her the Dean of Library position even though she was very qualified and many of the job duties

mirrored her prior job duties as Library Director.

100.    Indeed, E&H also discriminated against Ms. Abraham by failing to hire her the open Administrative Assistant for Alumni Relations position, which was filled by a non-disabled and younger individual.

101.    Despite the fact that Ms. Abraham was overly qualified for an entry-level administrative position, she submitted an application on or around August 9, 2016.

102.    Despite the fact that Ms. Abraham was more than qualified for both of these positions and despite her years of excellent service to E&H, Ms. Abraham did not receive so much as an interview for either position.

103.    Prior to Ms. Abraham's termination, Ms. Abraham was performing her work at a satisfactory level and meeting or exceeding E&H's legitimate business expectations.  In addition, Ms. Abraham was extremely experienced and well-qualified for the aforementioned positions.  Accordingly, there was no legitimate reason to refuse to consider her for either position.

104.    E&H's failure to hire Ms. Abraham occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon Ms. Abraham's age.

105.    E&H would not have failed to hire Ms. Abraham or taken the other discriminatory actions against Ms. Abraham but for Ms. Abraham's age.

106.    As a direct and proximate result of E&H's actions, Ms. Abraham has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

107.    At all times material hereto, E&H engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Abraham so as to support an award of liquidated damages.

108.    The above-described acts by E&H and employees of E&H constitute age discrimination, in the form of a failure to hire claim, in violation of the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA").

## COUNT VIII:  Discrimination Pursuant to the ADA

109.    Ms. Abraham incorporates by reference herein the preceding paragraphs of this Complaint.

110.    At all times relevant to the Complaint, Ms. Abraham was a qualified individual with disabilities under the ADA.

111.    At all times relevant to the Complaint, Ms. Abraham could perform the essential functions of her job as Chief Information Officer and Director of the Library with or without an accommodation.

112.    Prior to Ms. Abraham's unlawful termination from employment, she was performing her work at a satisfactory level and meeting or exceeding E&H's legitimate business expectations.

113.    Prior to her termination from employment, Ms. Abraham revealed her disability and asked for a reasonable accommodation related to an accessible bathroom and a parking spot.

114.    In addition, directly prior to her termination from employment, Ms. Abraham informed E&H supervisor, David Haney, Vice President of Academic Affairs, and supervisor Melissa Taverner, Interim Dean of Faculty, of the above-referenced IVC filter implant issue on multiple occasions.

115.    Ms. Abraham specifically advised both Mr. Haney and Ms. Taverner that she [Ms. Abraham] anticipated that she would need additional accommodations related to this serious health condition.

116.    Ms. Abraham was terminated from employment for revealing her disabilities and for indicating that related accommodation requests would be forthcoming.

117.    E&H would not have terminated Ms. Abraham or taken the other discriminatory actions against her but for Ms. Abraham's disabilities and/or her request for reasonable accommodations and/or her anticipated need for additional reasonable accommodations.

118.    Indeed, the short temporal proximity between Ms. Abraham's communications with Mr. Haney and Ms. Taverner and Ms. Abraham's discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon Ms. Abraham's disabilities or requests for reasonable accommodations.

119.    Any reasons provided by E&H for Ms. Abraham's termination from employment were pretextual.

120.     As a direct and proximate result of Defendant's actions, Ms. Abraham has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

121.     At all times material hereto, E&H engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Abraham so as to support an award of punitive damages.

122.     The above-described acts by E&H and employees of E&H constitute disability discrimination in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., and the ADA Amendments Act of 2008 ("ADA").

## COUNT IX:  Retaliation Pursuant to the ADA

123.     Ms. Abraham incorporates by reference herein the preceding paragraphs of this Complaint.

124.     At all times relevant to the Complaint, Ms. Abraham was a qualified individual with disabilities under the ADA.

125.     At all times relevant to the Complaint, Ms. Abraham could perform the essential functions of her job as Chief Information Officer and Director of the Library with or without an accommodation.

126.     Prior to Ms. Abraham's unlawful termination from employment, she was performing her work at a satisfactory level and meeting or exceeding E&H's legitimate business expectations.

127.     Prior to her termination from employment, Ms. Abraham revealed her

21

disabilities and asked for a reasonable accommodation related to an accessible bathroom and a parking spot.

128.    In addition, directly prior to her termination from employment, Ms. Abraham engaged in the protected conduct of informing Mr. Haney and Ms. Taverner that she would likely need disability accommodations related to her serious health condition involving an IVC filter.

129.    Ms. Abraham was terminated from employment in retaliation for revealing her disabilities and for indicating that related accommodation requests would be forthcoming.

130.    E&H would not have terminated Ms. Abraham or taken the other retaliatory actions against her but for Ms. Abraham's disabilities and/or her request for reasonable accommodations and/or her anticipated need for additional reasonable accommodations.

131.    Indeed, the short temporal proximity between Ms. Abraham's communications with Mr. Haney and Ms. Taverner and Ms. Abraham's discharge from employment occurred under circumstances that raise a reasonable inference of unlawful retaliation based upon Ms. Abraham's disabilities or requests for reasonable accommodations.

132.    Any reasons given by E&H for Ms. Abraham's termination from employment were pretextual.

133.    As a direct and proximate result of Defendant's actions, Ms. Abraham has

suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

134.     At all times material hereto, E&H engaged in unlawful or retaliatory practices with malice or reckless indifference to the federally protected rights of Ms. Abraham so as to support an award of punitive damages.

135.     The above-described acts by E&H and employees of E&H constitute retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq*., and the ADA Amendments Act of 2008 ("ADA").

### COUNT X:  Intentional Infliction of Emotional Distress

136.     Ms. Abraham incorporates by reference herein the preceding paragraphs of this Complaint.

137.     At all times, through its agents and representatives, E&H acted intentionally and/or recklessly regarding the treatment of Ms. Abraham.

138.     E&H's conduct was both extreme and outrageous.

139.     Due to the acts and/or omissions of E&H, Ms. Abraham has suffered severe emotional distress and related physical health issues.

140.     Due to E&H's actions, Ms. Abraham has suffered and experienced an increase in worrying, anxiety, severe headaches, depression, fatigue, insomnia, frequent panic attacks, night terrors, reduced self-esteem and self-confidence, reduced mental capacity, loss of hair, psoriasis flare ups, and other health issues.

141.     The emotional distress was so severe as to physically and mentally harm

23

Ms. Abraham, resulting in the need for professional medical treatment.

142.      E&H intentionally inflicted emotional distress upon Ms. Abraham.

## COUNT XI:  Negligent Infliction of Emotional Distress

143.      Ms. Abraham incorporates by reference herein the preceding paragraphs of this Complaint.

144.      At all times, through its agents and representatives, E&H had a duty not to act with such reckless disregard as to cause Ms. Abraham harm.

145.      E&H's conduct was both extreme and outrageous.

146.      Due to the acts and/or omissions of E&H, Ms. Abraham has suffered severe emotional distress and related physical health issues.

147.      Due to E&H's actions, Ms. Abraham has suffered and experienced an increase in worrying, anxiety, severe headaches, depression, fatigue, insomnia, frequent panic attacks, night terrors, reduced self-esteem and self-confidence, reduced mental capacity, loss of hair, psoriasis flare ups, and other health issues.

148.      The emotional distress was so severe as to physically and mentally harm Ms. Abraham, resulting in the need for professional medical treatment.

149.      It was entirely foreseeable that E&H's acts and/or omissions in the treatment of Ms. Abraham would result in great emotional harm.

150.      E&H negligently inflicted emotional distress upon Ms. Abraham.

WHEREFORE, Plaintiff Lorraine Netrick Abraham prays for judgment against Defendant Emory & Henry College for equitable relief, punitive and/or liquidated damages, together with prejudgment interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA  24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelklaw.com

*Counsel for Plaintiff*

25